IN THE SUPREME COURT OF NORTH CAROLINA

No. 324A19

Filed 18 December 2020

STATE OF NORTH CAROLINA

v.

JACK HOWARD HOLLARS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 266 N.C. App. 534, 833 S.E.2d 5 (2019), remanding the case for a hearing on defendant's competency based on judgments entered on 12 January 2018 by Judge William H. Coward in Superior Court, Watauga County. Heard in the Supreme Court on 31 August 2020.

> *Joshua H. Stein, Attorney General, by Matthew W. Sawchak, Solicitor General,[1] Ryan Y. Park, Deputy Solicitor General, and Nicholas S. Brod, Assistant Solicitor General, for the State-appellant.*
>
> *Glenn Gerding, Appellate Defender, by Anne M. Gomez, Assistant Appellate Defender, for defendant-appellee.*

MORGAN, Justice.

Defendant was arrested on 10 February 2012 for allegedly sexually assaulting his stepdaughter for a period consisting of the late 1970s and early 1980s. He was brought to trial on 8 January 2018 for three counts each of second-degree sexual offense and taking indecent liberties with a child following almost six years of

---

[1] On 30 March 2020, we allowed a motion by Matthew W. Sawchak to withdraw as counsel for the State of North Carolina.

fluctuating determinations of defendant's competency to stand trial. At the end of the third day of the trial, defense counsel apprised the trial court of a brief conversation which the attorney had just had with defendant and, based on concerns that the exchange raised with defense counsel, he asked the trial court to inquire into defendant's competency. No inquiry of defendant was performed by the trial court at the time, the trial was recessed for the day shortly thereafter, and the trial court stated that the matter would be addressed on the next morning. During the inception of the trial proceedings on the following day and upon the trial court's inquiry to defense counsel about any more information or arguments about defendant's capacity, defense counsel replied that there were no existing concerns. The trial resumed, and upon its conclusion, the jury returned verdicts of guilty on all six charges on 12 January 2018. Defendant appealed to the Court of Appeals, arguing that the events on the third day of trial combined with defendant's lengthy history of mental illness, which included periods of incompetence to stand trial, created a duty upon the trial court to inquire sua sponte into the competency of defendant to stand trial. *See State v. Hollars*, 266 N.C. App. 534, 537–38, 833 S.E.2d 5, 7–8 (2019). The Court of Appeals held that substantial evidence existed before the trial court to create a bona fide doubt as to defendant's competency, and therefore the trial court's failure to make inquiry into defendant's competency at trial violated his due-process rights. *Id.* at 542, 833 S.E.2d at 10. The State appeals to our Court based on the dissent of a member of the Court of Appeals panel in which the dissenting judge opined that there

was no bona fide doubt as to defendant's competency, and therefore defendant's due-process rights were not implicated by the trial court's lack of inquiry into the matter. *See id.* at 545, 833 S.E.2d at 11–12 (Berger, J., dissenting). We agree with the conclusion of the Court of Appeals majority that substantial evidence existed so as to create a bona fide doubt about defendant's competency. As a result, we affirm the decision of the lower appellate court which includes remanding the matter to the trial court pursuant to the instructions contained within the Court of Appeals majority opinion.

*Factual and Procedural Background*

In January 2012, the alleged victim in this case—a female minor—reported to the Watauga County Sheriff's Office that for a period of time spanning the late 1970s and early 1980s, when she was between twelve and fifteen years of age, defendant sexually assaulted the minor on virtually a weekly basis. Defendant was initially arrested and charged with a single count of statutory sexual offense on 10 February 2012. Subsequently, a grand jury indicted defendant on three counts of second-degree sexual offense and three counts of taking indecent liberties with a child. Following his arrest, defendant initially waived his right to court-appointed counsel at his first appearance on 23 February 2012, but the trial court nevertheless appointed counsel to defendant two months later, citing its observation that defendant was unresponsive to questioning by the trial court at defendant's probable cause hearing on 23 April 2012. Defendant's appointed counsel met with defendant while defendant

was in custody in the Watauga County Jail on 1 May 2012. Defense counsel reported to the trial court three days later that defendant had presented a scattered and random thought process and had made multiple paranoid statements concerning God and the effects of exposure to chemicals on his brain during defendant's tenure in the Marine Corps. On 4 May 2012, the trial court ordered Daymark Recovery Services to complete a forensic evaluation of defendant to determine his competency to stand trial. This assessment of defendant became the first in a series of seven evaluations which are pertinent to this appeal.[2]

Dr. Hawkinson with Daymark Recovery Services completed his evaluation report on 9 May 2012, which noted that defendant appeared "psychotic and delusional" with a "limited ability to cooperate in even basic discussion of his case." Based on his observations, Dr. Hawkinson concluded that defendant was incompetent to stand trial. Following the receipt and review of the Hawkinson 5/9/2012 report, the trial court ordered that defendant be committed to the custody of Central Regional Hospital in Butner, North Carolina, or another designated facility for further evaluation and safekeeping. Once in the custody of Central Regional Hospital, another competency evaluation report was authored by Dr. Bartholomew on 9 August 2012. While the Bartholomew 8/9/2012 report agreed with the Hawkinson 5/9/2012

---

[2] In order to facilitate ease of reading and for reference to each of the competency evaluations, this opinion refers to each evaluation by the healthcare provider who completed the evaluation and the date upon which the evaluation report is signed by the provider.

report that defendant was incompetent to proceed to trial, Dr. Bartholomew also noted that defendant "may gain capacity if he receives mental health treatment." Upon review of the Bartholomew 8/9/2012 report, the trial court entered an order finding defendant incapable to proceed and ordered defendant to be committed to Broughton Hospital in Morganton, North Carolina.

During his time at Broughton Hospital, defendant responded well to his provider's efforts to have defendant engage in mental health treatment, medication, and vocational occupations like exercise classes and work duties. Seven months after defendant's commitment to Broughton Hospital, Dr. Bartholomew again evaluated defendant for his capacity to stand trial and detailed the results of the evaluation in a report dated 14 May 2013. The Bartholomew 5/14/2013 report concluded that, due in part to defendant's adherence to a medication regimen, defendant "demonstrated an adequate understanding of the nature of criminal legal processes" and was "able to assist in his defense in a rational and reasonable manner." Dr. Bartholomew considered defendant to be capable to proceed to trial at this juncture. On 3 September 2013, a Watauga County grand jury handed down a first set of indictments, charging defendant with four counts each of statutory sex offense and taking indecent liberties with a child; correspondingly, the trial court appointed new trial counsel to represent defendant. Superseding indictments were issued on 4 May 2015 which charged defendant with three counts each of second-degree sexual offense and taking indecent liberties with a child.

On 15 December 2014, defendant was transported from Broughton Hospital to the Watauga County Jail to discuss a plea offer with his appointed counsel. While defendant first appeared to understand his circumstances in his initial discussions with counsel upon defendant's arrival at the jail, defense counsel noted that when he met with defendant on the following day and defendant was "unable to discuss plea or trial options and insisted his millionaire sister would spend thousands" on his defense, despite the fact that defendant had no sisters with such resources. Defense counsel relayed this information to the trial court in open court on 2 March 2015, upon which the trial court granted the request of defense counsel for another competency evaluation of defendant. Pursuant to the trial court's order, Dr. Bartholomew conducted another evaluation of defendant. Dr. Bartholomew's report of 14 April 2015 again concluded that defendant was competent to proceed to trial, while explaining that defendant's confusing statements at the Watauga County Jail were likely attributable to a temporary decomposition of his mental faculties due to the change in his sleeping arrangements. However, Dr. Bartholomew predicated his determination that defendant was competent to stand trial at the time that Dr. Bartholomew signed the Bartholomew 4/14/15 report on two caveats: first, Dr. Bartholomew advised that defendant should be housed at Broughton Hospital and transported to court each day for the duration of the trial in order to prevent a similar change in mental state as witnessed by defense counsel in December 2014; and

second, Dr. Bartholomew noted that defendant's "condition may deteriorate with the stress of trial so vigilance is suggested if his case proceeds to trial."

Dr. Bartholomew testified about the predications and conclusions in his report at a competency hearing held by the trial court on 5 May 2015. At the close of the hearing, the trial court acknowledged Dr. Bartholomew's determination of defendant's competency but advised that the conditions asserted in the Bartholomew 4/14/2015 report required "the [c]ourt to give [defendant] special treatment which is not normally considered in other criminal actions." Concerned about the conditional nature of Dr. Bartholomew's determination of defendant's competency, on 27 July 2015 the trial court ordered an additional independent forensic evaluation to be completed by Dr. Bellard. Following his completion of an evaluation of defendant which was conducted pursuant to the trial court's order, Dr. Bellard issued a report on 4 November 2015 in which the examiner concluded that, while defendant experienced improved mental capacity while housed at Broughton Hospital, defendant's "difficulty relating to defense counsel" and general inability to tolerate the stress of waiting for trial rendered defendant incompetent to stand trial. Dr. Bellard also chronicled that defendant had recently had the antipsychotic medications prescribed to him by defendant's providers at Broughton Hospital cut in half and opined that defendant "could improve to a position where he was competent to stand trial if the medications were taken back" to their original levels. In accepting

the report of Dr. Bellard, the trial court instructed defense counsel to prepare an order to be entered which found defendant to lack capacity to stand trial.

During his continued commitment at Broughton Hospital, defendant was evaluated by Dr. Bartholomew on two more occasions, once in December 2016 and once in August 2017. Citing the success of defendant's continued treatment, Dr. Bartholomew concluded in a report dated 8 December 2016 that defendant was capable of proceeding to trial and assisting in his own defense. Dr. Bartholomew was joined by Dr. Utterback in conducting a final evaluation of defendant in August 2017. In their joint report dated 24 August 2017, Dr. Bartholomew and Dr. Utterback advised that "given the stability of [defendant's] mental status and functioning for the last year or more at Broughton Hospital, we believe it is reasonable to assume he will maintain this functioning in the foreseeable future and during trial." Thus, Dr. Bartholomew and Dr. Utterback concluded that defendant was capable of proceeding to trial. At a competency hearing held on 5 September 2017, the State proffered to the trial court for consideration this final report jointly generated by Dr. Bartholomew and Dr. Utterback and advised the trial court that Dr. Bartholomew was in the courtroom and available to be called as a witness if necessary. Defense counsel concurred with the State that defendant was capable of proceeding to trial at that point, adding that defense counsel's agreement was due in part to a conference with Dr. Bellard earlier on the morning of the hearing. According to defense counsel, Dr. Bellard had reported to the courtroom for the competency hearing, had engaged

in dialogue with defendant prior to the hearing's commencement, and had advised defense counsel that he agreed with the determination by Dr. Bartholomew and Dr. Utterback that defendant had the capacity to proceed on 5 September 2017.

The trial court reviewed the Bartholomew and Utterback 8/24/2017 report before finding that defendant was competent to stand trial and before setting defendant's trial date for 2 October 2017. Four days before the trial was scheduled to begin, however, defense counsel filed a motion to continue the trial because a recent death in the attorney's family necessitated his presence in another state on the date of the trial. More than four months passed between the last discussion of defendant's competency to stand trial and the first day of defendant's rescheduled trial on 8 January 2018. In the meantime, defense counsel filed several pretrial motions which referenced defendant's complex and fluctuating mental health history.

The trial proceedings began with a hearing on several of defendant's pretrial motions on 8 January 2018; the State called its first witness to render testimony at the trial on the afternoon of 10 January 2018. The State's first witness was the alleged victim. She testified about the first episodes of sexual abuse that she alleged that defendant committed upon her. Defense counsel lodged an objection to this testimony, arguing that the acts to which the alleged victim was testifying fell outside of the offense date ranges of the indictments. Outside of the presence of the jury, the trial court discussed with the parties the prospect that the alleged victim's testimony could be treated as "404(b) evidence," referring to Rule 404(b) of the North Carolina Rules

of Evidence which governs circumstances concerning the admissibility or inadmissibility of other crimes, wrongs, or acts committed by the defendant. N.C. R. Evid. 404(b) (2019).

Upon its completion of the discussion of the cited evidentiary rule with the parties, the trial court brought the jurors back into the courtroom and administered a Rule 404(b) instruction before allowing the State to continue with its direct examination of the victim. Just before 5:00 p.m. on the afternoon of 10 January 2018, defense counsel made another objection to the alleged victim's testimony. The trial court sustained the objection before deciding to recess the proceedings for the evening. The trial court then instructed the State and defense counsel to be prepared to discuss the Rule 404(b) evidence issue on the following morning. The trial court recessed at 5:03 p.m. before coming back on the record less than a minute later. At that time, defense counsel advised the trial court of the following:

> Your Honor, . . . I just had a brief conversation with [defendant] during which I began to have some concerns about his capacity and I would ask the Court to address him regarding that.
>
> . . . .
>
> . . . I've been asking him how he's doing and if he knows what's going on. And up until just now he's been able to tell me what's been going on. He just told me just a few minutes ago that he didn't know what was going on.

The trial court responded that "when we start throwing around [Rule] 404(b) and [Rule] 403, you'd have to have graduated from law school to have any inkling of

what we're talking about." The trial court then asked defense counsel for further

specificity as to his concerns. In response, defense counsel reiterated the following:

> I asked him if he understood what was going on. He said,
> no, he didn't know what she was talking about. And that
> has not been the way he has been responding throughout
> this event, either yesterday or earlier today. And in light of
> the history with him, I just want to make sure. I just—I
> feel we need to make sure. And I'm not asking for an
> evaluation. I would just ask for the Court to query him
> quickly to make sure that I'm just not—make sure I'm
> seeing something that is not there.

The trial court decided to address this matter as well on the following morning,

surmising that the source of defendant's confusion was the previous discussion of the

potential Rule 404(b) evidence. The trial court conjectured that "[w]e could take a poll

around here of non-lawyers and see if they understood [Rule 404(b)]. I doubt many of

them would." The trial court stated that if it determined in the morning that

defendant understood what was happening during the trial, "then I would say that

the capacity situation hasn't changed any." Upon the resumption of court proceedings

on the following morning on 11 January 2018, the trial court did not address

defendant directly as defense counsel had requested toward the end of the previous

day's trial session; instead, the trial court queried defense counsel as to whether

defense counsel had "any more information or arguments" that he wanted to make

concerning defendant's capacity. Defense counsel responded with the following:

> No, Your Honor. When he came in this morning he greeted
> me like he has other mornings. I interacted with him
> briefly and he interacted like he has been interacting every

> morning. And I've not had any questions about his capacity
> this morning. I just had some yesterday evening because
> he kind of looked at me and the look in his face was like he
> had no idea who I was.

The trial court once again associated defendant's expressed confusion and vacant expression which concerned defense counsel on the previous day with the discussion between the trial court and the parties regarding the Rule 404(b) evidence. The trial court stated "[y]eah, well, any time you get to—like I said, any time you get to talking about [Rule] 404(b) and [Rule] 403 everybody in the courtroom is going to look like that." The trial court then allowed the State to resume the presentation of its case-in-chief without further inquiry into defendant's capacity to proceed.

On 12 January 2018, the jury returned verdicts of guilty on three counts of taking indecent liberties with a child and three counts of second-degree sexual offense. The trial court sentenced defendant to a total of 150 years in prison: ten years for each offense of taking indecent liberties with a child and forty years for each offense of second-degree sexual offense, with the terms of incarceration to run consecutive to one another. Defendant appealed to the Court of Appeals.

A majority of the Court of Appeals panel agreed with defendant's contention, as framed in the lower appellate court's opinion, that "the trial court erred by failing to conduct *sua sponte* a competency hearing either immediately before or during the trial because substantial evidence existed before the trial court that indicated [d]efendant may have been incompetent." *Hollars*, 266 N.C. App. at 541, 833 S.E.2d

at 9. The Court of Appeals majority summarized its reasons for concluding that "the trial court was presented with substantial evidence raising a bona fide doubt as to [d]efendant's competency to stand trial" in the following manner:

> In light of [d]efendant's extensive history of mental illness, including schizophrenia, schizoaffective disorder, bipolar disorder, and mild neurocognitive disorder, his seven prior forensic evaluations with divergent findings on his competency, the five-month gap between his competency hearing and his trial, the concerns expressed by physicians and other trial judges about the potential for [d]efendant to deteriorate during trial and warning of the need for vigilance, the concerns his counsel raised to the trial court regarding his conduct and demeanor on the third day of trial, and the fact that the trial court never had an extended colloquy with [d]efendant, we conclude substantial evidence existed before the trial court that raised a bona fide doubt as to [d]efendant's competency to stand trial. Therefore, the trial court erred in failing to institute *sua sponte* a competency hearing for [d]efendant.

*Id.* at 542–43, 833 S.E.2d at 10–11.

With this outcome, the majority decided that the appropriate remedy here would be to "remand to the trial court for a determination of whether a meaningful retrospective hearing can be conducted on the issue of [d]efendant's competency at the time of his trial." *Id.* at 544, 833 S.E.2d at 11. As guidance to the trial court regarding the focus and the direction of the proceedings upon remand, the Court of Appeals instructed that

> if the trial court concludes that a retrospective determination is still possible, a competency hearing will be held, and if the conclusion is that the defendant was competent, no new trial will be required. If the trial court

-13-

> determines that a meaningful hearing is no longer possible, defendant's conviction must be reversed and a new trial may be granted when he is competent to stand trial.

*Id.* (quoting *State v. McRae*, 139 N.C. App. 387, 392, 533 S.E.2d 557, 561 (2000)).

The dissenting judge of the Court of Appeals panel viewed the issues of the case in the following regard:

> There was no *bona fide* doubt as to [d]efendant's competence to stand trial, and there was not substantial evidence before the trial court that [d]efendant was incompetent. Thus, the trial court did not err when it began [d]efendant's trial, and proceeded with the trial, without undertaking another competency hearing . . . .

*Id.* at 545, 833 S.E.2d at 11–12 (Berger, J., dissenting). Specifically, the dissenting judge opined that the record did not contain any evidence "of irrational behavior or change in demeanor by [d]efendant at trial." *Id.* at 545, 833 S.E.2d at 12 (Berger, J., dissenting). The dissenting judge considered the examiners' opinions that were contained in the evaluation reports, that the stability of defendant's mental status and functioning would be maintained in the foreseeable future and during a trial, were sufficient to indicate there was "nothing in the record that would have required the trial court to conduct another pre-trial hearing." *Id.* at 547, 833 S.E.2d at 13 (Berger, J., dissenting). As for the majority's determination that, as described in the dissenting opinion, "the trial court erred by failing to intervene *sua sponte* following an exchange between defense counsel and the trial court," *id.*, the dissenting judge disagreed by noting that "[t]he 'brief conversation' by [d]efendant and defense counsel

[during trial on 10 January 2018] did not produce '*substantial evidence before the court* indicating that the accused may be mentally incompetent' " because "there was [a] very real probability that [d]efendant did not understand the intricacies of 404(b) testimony, and that he had in fact heard and understood the victim's testimony," *id.* at 550, 833 S.E.2d at 15 (Berger, J., dissenting). The dissenting judge concluded that there was no bona fide doubt as to defendant's competence, that there was not substantial evidence before the trial court that defendant was incompetent, and that the trial court did not err when it began defendant's trial and proceeded with the trial without undertaking another competency hearing. *Id.* at 551, 833 S.E.2d at 15 (Berger, J., dissenting).

The State's appeal of the decision of the Court of Appeals majority in this case brings the matter to us for consideration.

*Analysis*

The Due Process Clause of the Constitution of the United States shields criminal defendants who are incompetent to stand trial for charges levied against them by the State from being compelled to do so while they remain incompetent. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). In order to possess the competence necessary to stand trial, a defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). While "a competency determination is necessary only when a court has reason to doubt the

defendant's competence," *Godinez v. Moran*, 509 U.S. 389, 401 n.13 (1993), North Carolina criminal courts have a "constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent." *State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007) (quoting *State v. King*, 353 N.C. 457, 467, 546 S.E.2d 575, 585 (2001)).

Substantial evidence which establishes a bona fide doubt as to a defendant's competency may be established by considering "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope*, 420 U.S. at 180. While this Court has determined that some evidence of mental health treatment for issues unrelated to the defendant's competency does not constitute the substantial evidence necessary to trigger the trial court's duty to hold a competency hearing, *King*, 353 N.C. at 467, 546 S.E.2d at 585, the presence of any one of the factors cited above from *Drope* has the potential to give rise to a bona fide doubt as to the defendant's competency in some circumstances. *See Drope*, 420 U.S. at 180. Regardless of the circumstances that constitute substantial evidence of a defendant's incompetence, the relevant period of time for judging a defendant's competence to stand trial is "at the time of trial." *State v. Cooper*, 286 N.C. 549, 565, 213 S.E.2d 305, 316 (1975), *overruled in part on other grounds by State v. Leonard*, 300 N.C. 223, 266 S.E.2d 631 (1980). As a result, the trial court must remain on guard over a defendant's competency; even when the defendant is deemed competent to stand trial

at the commencement of the proceedings, circumstances may arise during trial "suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope*, 420 U.S. at 181.

The State argues that following the trial court's determination that defendant was competent to stand trial at the 5 September 2017 competency hearing, defendant presented no substantial evidence raising a bona fide doubt as to his competency. Thus, the State contends that the trial court's determination which was made four months prior to trial that defendant was competent to stand trial served to suppress any duty on the part of the trial court to conduct another competency hearing either immediately preceding the start of the trial or after the events of the trial's third day. The Court of Appeals majority disagreed with this argument, opining that "[g]iven the temporal nature of [d]efendant's mental illness, the appropriate time to conduct a competency hearing was immediately prior to trial." *Hollars*, 266 N.C. App. at 542, 833 S.E.2d at 10. The lower appellate court found it "significant" that "[d]efendant's prior medical records disclosed numerous concerns about the potential for [d]efendant's mental stability to drastically deteriorate over a brief period of time and with the stress of trial." *Id.* Consequently, the lapse of several months between the trial court's 5 September 2017 determination of defendant's competency to stand trial and the 8 January 2018 inception of defendant's trial required the conduction of another competency hearing immediately before trial. *Id.* at 542–43, 833 S.E.2d at 10. The Court of Appeals characterized the events of the afternoon of the trial's third

day and the morning of the trial's fourth day as "additional support for this conclusion" because the basis for defendant's expressed confusion which was also detected and confirmed by defense counsel operated to reinforce the need for vigilance on the part of the trial court. *Id.* at 543, 833 S.E.2d at 10–11.

Adherence to the principles espoused by the Supreme Court of the United States in its decisions rendered in *Cooper*, *Godinez*, and the progenitor case *Drope*, along with our Court's precedent established in *Badgett*, *King*, and *Cooper*, support the determinations reached by the Court of Appeals in the present case. Although the trial court was required to initiate an inquiry into the competency of defendant to stand trial only in the event that there was reason to doubt the accused's competency, there was substantial evidence existent before the trial court which indicated that defendant might be mentally incompetent to stand trial. We have already recounted the panoply of matters and circumstances which the majority of the lower appellate court properly considered in concluding that there was a sufficient amount of evidence—contrary to the dissenting judge's view—to constitute a bona fide doubt concerning defendant's competency to stand trial. Therefore, the trial court was obligated to protect the due-process rights of defendant by initiating, *sua sponte*, a competency hearing in order to ensure that defendant possessed the capacity to understand the nature and object of the proceedings against him, to consult with his counsel, and to assist in the preparation of his defense.

Even assuming, *arguendo*, that the State's contention bears some merit that there was not substantial evidence existent at the outset of the trial that raised a bona fide doubt concerning defendant's competency due to the "near-dispositive weight" which the Court of Appeals gave to "three psychiatric evaluations that found [defendant] incompetent" and that "the court's reliance on outdated evaluations caused it to overlook more recent, probative record evidence that refuted any need to hold another competency hearing before the trial" which included "evidence from three different psychiatrists, who unanimously agreed that [defendant] was competent . . . [and a]n evaluation admitted at the [same 5 September 2017] hearing also stated that [defendant] was likely to maintain his competency throughout the trial," this depiction by the State of defendant's perceived competency to proceed at the outset of the trial is significantly eroded by the occurrences which transpired on the third day of the trial. Despite defense counsel's unequivocal concerns on the trial's third day about defendant's capacity, defense counsel's articulated basis for these concerns which centered upon defendant's representation that defendant "didn't know what was going on" after being able to tell defense counsel just prior to that juncture "what's been going on," and "in light of the history with him," the trial court refrained from conducting a competency hearing even after defense counsel's recapitulation of his concern, which was described to the trial court on the next day of trial, that during the transpiration of events on the trial's previous day, "the look in [defendant's] face was like [defendant] had no idea who [defense counsel] was."

While the State and the dissenting judge below attribute defendant's apparent confusion, as did the trial court, to defendant's unfamiliarity with the intricacies of the admissibility or inadmissibility into evidence of other crimes, wrongs, or acts committed by him, nonetheless, such a potentially logical explanation for the apparent confusion of a defendant who has a documented history of mental illness and resulting multiple determinations of an incapacity to stand trial must yield to the necessity of the criminal justice system to ensure that a defendant's due-process rights are protected from a demand to stand trial at a time when the defendant is incompetent. To this end, under the facts and circumstances presented in the instant case, we hold that the trial court committed prejudicial error by failing to conduct a competency hearing for defendant in light of the existence of substantial evidence which was sufficient to raise a bona fide doubt regarding defendant's competency to stand trial.

## *Conclusion*

Based upon the foregoing statements, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice NEWBY dissenting.

This case asks whether the trial court was presented with substantial evidence that defendant was incompetent such that it was required to hold a competency hearing during trial. Defense counsel had a history of interacting with his client and was in the best position to assess his client's competency. While initially raising a concern, defense counsel subsequently assured the trial court that his client was competent. The trial court, after personally observing defendant's behavior and the courtroom circumstances, made its independent determination. Defendant's seeming confusion during a technical and complex explanation of the rules of evidence in light of all the other circumstances does not constitute substantial evidence of incompetence. Therefore, the trial court did not err when it decided that it would proceed without a competency hearing. The majority, however, takes one isolated incident, disregards the perspective of defense counsel and the trial court, and places its review of the cold record above the perspective of those actually present. Because these circumstances do not present substantial evidence of defendant's incompetency sufficient to trigger a hearing, I respectfully dissent.

Before trial, defendant had been extensively evaluated for years. Four months before the trial was to begin, defendant was deemed competent to stand trial by three doctors who had evaluated him multiple times in the past. The doctors' competency determinations were based on several factors, including that defendant was finally

taking his medication consistently. The doctors' reports contained no suggestion of defendant's need for another evaluation before trial.

Defendant's trial began on 10 January 2018 at around 9:30 a.m. Jury selection took more than half the day until the jury was released for lunch at about 12:35 p.m. At that time, defense counsel had no concerns about defendant's competence. After lunch, the trial court resumed its session around 2:00 p.m. After the jury was impaneled shortly around 3:00 p.m., the trial court gave instructions to the jury and the State and defense gave opening statements. The State then called its first witness, who was the victim. The victim started testifying about incidents of sexual abuse that preceded the dates of those charged in the indictment. Defense counsel objected to this portion of the testimony and asked to be heard outside of the jury's presence. The jury left the courtroom at 4:27 p.m. The trial court and counsel discussed the possibility that the victim's testimony concerning incidents not alleged in the indictment could be admitted as evidence under Rule 404(b) of the North Carolina Rules of Evidence, and the jury came back into the courtroom at 4:34 p.m. The trial court then gave a limiting instruction to the jury about how Rule 404(b) evidence may be considered by the jurors, and the State continued questioning the victim. The trial court then gave another instruction before the jury was released at 5:00 p.m., and the trial court took a very brief recess. At 5:03 p.m., the following exchange occurred:

[DEFENSE COUNSEL]: . . . I just had a brief conversation with [defendant] during which I began to have some concerns about his capacity and I would ask the Court to address him regarding that.

. . . .

I asked him—I've been asking him how he's doing and if he knows what's going on. And up until just now he's been able to tell me what's been going on. He just told me just a few minutes ago that he didn't know what was going on.

THE COURT: Well, when we start throwing around 404(b) and 403, you'd have to have graduated from law school to have any inkling of what we're talking about. So I'm not sure what it is you—I want you to be more specific.

[DEFENSE COUNSEL]: He said—I asked him—he said— I asked him if he understood what was going on. He said no, he didn't know what she was talking about. And that has not been the way he has been responding throughout this event, either yesterday or earlier today. And in light of the history with him, I just want to make sure. I just—I feel we need to make sure. And I'm not asking for an evaluation I would just ask for the Court to query him quickly to make sure that I'm just not—make sure I'm seeing something that is not there.

THE COURT: Well, I tell you what, it's been a long day, and I'd rather inquire of [defendant] in the morning and give everyone a chance to rest. Give you a chance to talk to him and try to explain to him what's going on, especially with all of these rule numbers. I don't know if anybody could explain that to a non-lawyer and have them understand it.

We could take a poll around here of non-lawyers and see if they understood it. I doubt many of them would. But, you know, essentially what is going on is that the victim in this case has been telling everybody what he did, and that's about a simple concept as you can imagine. Now, if he surely does not understand that for some reason, not that

he remembers it or not, or whether he can think of some defense or something, that is not the case.

[DEFENSE COUNSEL]: I understand.

THE COURT: But if the information coming from this woman about what he did, if he can understand that is what is happening, then I would say that the capacity situation hasn't changed any. We've got one, two—I counted them before, three, four, five, six, capacity evaluations. The latest one was August 15, 2017, and this latest one found him capable of proceeding. We'll talk about it in the morning.

[DEFENSE COUNSEL]: Yes, sir.

The following day, as soon as the trial court reconvened, it noted that it must discuss and evaluate whether there was the need for "any further inquiry as to [defendant's] capacity." The trial court asked defense counsel whether he "ha[d] any more information or arguments [he] want[ed] to make as to [defendant's] capacity." Defense counsel responded as follows:

> No, Your Honor. When he came in this morning he greeted me like he has other mornings. I interacted with him briefly and he interacted like he has been interacting every morning. And I've not had any questions about his capacity this morning. I just had some yesterday evening because he kind of looked at me and the look in his face was like he had no idea who I was.

At that point, the trial court reemphasized the confusing nature of the Rule 404(b) discussion, which occurred immediately before defense counsel expressed his concern. Defense counsel reiterated that he no longer had any concerns. Thus, the trial court chose to proceed without a competency hearing.

"[A] conviction cannot stand where the defendant lacks capacity to defend himself." *State v. King*, 353 N.C. 457, 467, 546 S.E.2d 575, 585 (2001). Therefore, the "trial court has a constitutional duty to institute, *sua sponte*, a competency hearing *if there is substantial evidence before the court* indicating that the accused may be mentally incompetent." *Id.* (quoting *State v. Young*, 291 N.C. 562, 568, 231 S.E.2d 577, 581 (1977)). A trial court should consider evidence of "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 908 (1975).

Here the proceedings, when taken as a whole, do not show substantial evidence of defendant's incompetence. The pretrial reports concluded defendant was competent. Though defense counsel raised a concern late in the day about defendant's competency after a technical evidentiary discussion, the next morning, defense counsel's concerns completely dissipated. His repeated assurances gave the trial court no reason to believe that defendant's brief confusion the evening before would be attributable to something other than the technical explanation of Rule 404(b) evidence relating to events that occurred outside the timeframe alleged in the indictments and the long day in court. Defense counsel was in the best position to observe any issues regarding competency as he interacted with his client. Additionally, the trial court, after presiding over an entire day of trial, observing defendant, and hearing the State's questioning of the victim, was well equipped to evaluate whether its explanation of Rule 404(b) would be confusing to a listener,

including defendant. The trial court is in the best position to consider and weigh the facts and circumstances and to make the appropriate determination as to whether substantial evidence of incompetence exists to require a hearing.

The majority does not appear to take issue with the premise that the trial court acted within its authority to delay any potential competency hearing until the next day. Nonetheless, the majority believes that defense counsel's brief concern and defendant's mental history warranted a competency hearing. Despite the trial court's personal observations of defendant and the circumstances, the majority prefers its review of the cold record over the trial court's actual observation of the events and conversations that occurred on the day of trial. Trial courts, however, have institutional advantages unavailable to appellate courts which place them in a better position to judge a defendant's demeanor and the events that occur during trial. In short, the trial court is certainly best equipped, having observed defendant in that moment, to determine whether a competency hearing should be held. Moreover, the trial court had the repeated assurances of defense counsel that he no longer had concerns about defendant's competency to stand trial. As previously stated, defense counsel is in the best position to assess defendant's competency given his extensive interaction with his client.

The trial court is in a better position than an appellate court to determine whether there was substantial evidence of defendant's incompetence. The trial court's view was supported by defense counsel's assurances, who is in the best position to

appreciate if his client is having difficulty understanding the proceedings. The trial court proceeded appropriately here. I respectfully dissent.